UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ADVANTA BANK,

    Plaintiff,

        v.

FEDERAL DEPOSIT INSURANCE
CORPORATION,

    Defendant.

Civil Action No. 09-2423 (JMF)

MEMORANDUM OPINION

Currently pending and ready for resolution is the Federal Deposit Insurance Corporation's Motion for Stay Pending Appeal and Supporting Memorandum of Points and Authorities [#16] ("Motion for Stay"). For the reasons stated below, the motion will be denied.

BACKGROUND

On December 17, 2009, the Federal Deposit Insurance Corporation ("FDIC") issued a Temporary Cease and Desist Order ("Temporary Order") to Advanta Bank ("Bank"). Advanta Bank is a Delaware-chartered bank. The Temporary Order alleged that the Bank was engaging in or about to engage in unsafe or unsound banking practices which threatened to dissipate the assets of the institution. Declaration of Julie D. Howland ¶ 25 [#12] ("Howland Decl.") ("In my opinion the Bank is engaged in unsafe and unsound banking practices in that the Bank Board lacks necessary independence from the Bank's bankrupt parent holding company and that the Bank's Inside Directors have a conflict of interest which they have demonstrated when directing

the affairs of the Bank and/or [Advanta Bank Corp., Draper Utah ("ABC")], and placed the priorities of the bankrupt Advanta above the priorities of its bank subsidiaries.").[1] After receiving the Temporary Order, the Bank filed Plaintiff's Motion for a Temporary Restraining Order and/or Preliminary Injunction [#3] ("Plaintiff's Motion") asking the Court to enjoin the FDIC from enforcing the Temporary Order. After the matter was briefed by both parties, the Court held a hearing on January 21, 2010, where all parties agreed that the matter was ripe for adjudication and that the court should issue a final decision.

On February 16, 2010, I issued an order enjoining the FDIC from enforcing the Temporary Order because the issuance of the Temporary Order was outside the statutory authority of the FDIC as expressed by Congress. See Order [#13] (2/16/10). I found that the FDIC had authority to issue a Temporary Order pursuant to 12 U.S.C. § 1818(c)(1)[2] only in cases where the alleged unsafe or unsound banking practices were likely to cause the dissipation of assets, which the FDIC sought to prevent. I concluded that, in the present case, the dissipation of the Bank's assets was not the result of the alleged unsafe or unsound banking practices, but instead was a result of the liquidation of the Bank's assets and termination of its deposit insurance, a process that the FDIC had requested the Bank to undertake. Findings of Fact and Conclusions of Law [#14] (2/16/10) at 9-11. I concluded that the FDIC's issuance of the

---

[1] The conduct and condition of ABC is related to the Bank only to the extent that the Bank's assets could be used to cross-gaurantee any losses that ABC would suffer were it to fail. The Bank has denied these allegations as they relate to the Bank and to ABC. Advanta Bank's Opposition to Federal Deposit Insurance Corporation's Motion for Stay Pending Appeal [#20] ("Bank's Opposition") at 2 n.1-2.

[2] All references to the United States Code are to the electronic versions in Westlaw or Lexis.

Temporary Order was beyond the scope of its statutory authority.

On the same day the Court enjoined the FDIC from enforcing the Temporary Order, the FDIC filed its motion for a stay. The Bank has filed its response brief as requested by the Court. I now deny the FDIC's motion.

## DISCUSSION

I.   <u>Legal Standard for Issuance of a Stay Pending Appeal</u>

Last year the Supreme Court described the "traditional standards" for the issuance of a stay pending appeal as follows: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." <u>Nken v. Holder</u>, 129 S Ct. 1749, 1756 (2009). The first two factors, likelihood of success on the merits and the injury to be suffered, are the critical factors. <u>Id.</u> at 1761. <u>See also</u> <u>id.</u> at 1763 (Kennedy, J., concurring) ("This is not to say that demonstration of irreparable harm, without more, is sufficient to justify a stay of removal. The Court has held that '[a] stay is not a matter of right, even if irreparable injury might otherwise result.'") (citing <u>Va. Ry. Co. v. United States</u>, 272 U.S. 658, 672 (1926))).

In ruling on the entitlement to a preliminary injunction or stay pending appeal, the court of appeals has emphasized that the traditional factors are "typically evaluated on a 'sliding scale.'" <u>Davis v. Pension Benefit Guar. Corp.</u>, 571 F.3d 1288, 1291 (D.C. Cir. 2009) (quoting <u>Davenport v. Int'l Bhd. of Teamsters</u>, 166 F.3d 356, 361 (D.C. Cir. 2009)). While a strong argument in favor of one factor may excuse a relatively weaker showing on another factor, it must be recalled that the court of appeals framed the issue as follows: "Has the petitioner made a

strong showing that it is likely to prevail on the merits of its appeal?  Without such 'substantial indication of probable success [on the merits], there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review." <u>Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.</u>, 559 F.2d 841, 843 (D.C. Cir. 1977); <u>see</u> <u>Davis</u>, 571 F.3d at 1292 ("But <u>Holiday Tours</u> did not eliminate the other factors.  The court simply acknowledged that a lessor likelihood of success might suffice if each of the other three factors clearly favors granting the injunction.").

II.   <u>Analysis</u>

    A.   <u>Likelihood of Success on the Merits</u>

The FDIC argues that it is likely to succeed on the merits for two main reasons.  First, it asserts that the Court erred in granting the injunction because it did not consider all of the required factors for doing so, only the likelihood of success on the merits. Motion for Stay at 3.  But, as the Bank points out, all parties agreed that this issue was ripe for a final adjudication, not merely an order on the request for a preliminary injunction. Bank's Opposition at 5 ("The standards applicable to a decision on a preliminary injunction, including the requirement that movant demonstrate a substantial likelihood of irreparable harm, are not applicable to a decision on the merits.").  While a transcript of the hearing the court held has not been filed, I specifically recall that I began the hearing by asking counsel whether they agreed that I should proceed to the final merits and that it was unnecessary to consider the application as one for a temporary restraining order to be followed by a second hearing on an application for a preliminary injunction.  Both counsel agreed that I should proceed to final judgment, which is exactly what I did.  Thus, in the Order, the Court did not issue a preliminary injunction or temporary order.

Instead, the Court "enjoined and prohibited" the FDIC from enforcing the Temporary Order against the plaintiff. Order [#13] (2/16/10). Additionally, the Clerk of the Court issued a final judgment. Judgment in a Civil Case [#18]. In other words, I viewed the matter as mutual motions for summary judgment on agreed upon facts and I entered judgment for the plaintiff. There, my responsibility began and ended. Whether either party had shown there was a likelihood of success on the merits, likelihood of substantial irreparable injury, or anything else was therefore irrelevant to my analysis of which party was entitled to final judgment.

The second argument the FDIC makes is that the factual underpinnings of the decision were faulty and that the Court misapprehended the sequence of events surrounding the issuance of the Temporary Order. Motion for Stay at 3-4. The FDIC asserts that, because it issued the Temporary Order in December, 2009 and did not receive the Bank's application for termination of insurance until January 13, 2010, the Temporary Order was issued prior to the termination process. Id. at 4. Under this view, any action taken by the Bank prior to January 13, 2010 could not possibly have been part of the liquidation and termination of the insurance. This interpretation of the sequence of events however fails to capture the reality of the Bank's intentions and the FDIC's knowledge of those intentions well before the January 13, 2010 application.

The Bank submitted two separate affidavits indicating that it was decreasing its deposits beginning in May 2009 and that the FDIC was aware of the Bank's intention to terminate its insurance in October of 2009. Plaintiff's Motion, Attachment 5 ¶¶ 3-6 (Declaration of Michael Coco) and Bank's Opposition, Attachment 1 ¶¶ 3-8 (Declaration of Jay Dubow). Additionally, the Howland Declaration indicates that the FDIC requested that the Bank either liquidate and

terminate its insurance or begin offering banking services to the public in a letter dated July 6, 2009. Howland Decl. ¶ 5. The Bank reduced its deposits between May 30, 2009 and September 30, 2009 by approximately $19 million and the Bank's Board resolved to liquidate and adopted a formal plan for liquidation on October 7, 2009. Bank's Opposition at 5-6. For the FDIC to now argue that no action prior to January 13, 2010 can be related to the liquidation and termination of insurance misapprehends the reality of the process that began months before the January, 2010 application. In any event, whether or when the FDIC had notice of the Bank's intention to liquidate had nothing whatsoever to do with whether the Temporary Order exceeded its statutory authority.

Finally, the FDIC contends that the failure of the Bank to maintain proper records is enough for the court of appeals to find that the Court's Order enjoining the Temporary Order should be overturned because that failure is a cause of the dissipation of the assets. Motion for Stay at 5. The FDIC believes that two questionable transactions took place and that, while it could ascertain how they happened, it is unable to discover why because of the failure of the Bank to maintain adequate records. Id.

Even assuming that this is correct, the FDIC has failed to demonstrate that these transactions were the cause of the dissipation of assets. Absent some new evidence[3] to the contrary, which the FDIC has not provided, it appears that the dissipation of assets at the bank was caused by the Bank's decision, at the FDIC's behest, to liquidate and terminate its insurance

---

[3] The Bank asserts that it provided the FDIC with all of the information that it asked for, and that it had not received any new requests and had in fact received confirmation from the FDIC that no further information was needed regarding the financial status or condition of the Bank. Bank's Opposition at 7.

and not by the Bank's failure to maintain records pertaining to the two questionable transactions. Thus, I find that the FDIC is not likely to succeed on the merits. It has offered no new arguments as to why its statutory authority would allow it to issue the Temporary Order in this case and has offered no new evidence that the alleged unsafe or unsound practices, and not the process of liquidation and termination, were the cause of the dissipation of the Bank's assets.

      B.      <u>Likelihood of Irreparable Injury</u>

The FDIC further contends that the likelihood of irreparable injury here is very great. Motion for Stay at 6. It bases this injury on the prospect of another bank, ABC, failing and costing the Insurance Fund hundreds of millions of dollars. If the Temporary Order is enjoined and the stay pending appeal is denied, any remaining assets in the Bank will be upstreamed to the bankrupt parent company and will no longer be available to cross-guarantee the losses at ABC. <u>Id.</u>

Because the harm in this case is economic, the FDIC must show either that the economic harm would threaten the existence of its business or that the moneys lost as a result of the lack of a stay would be unrecoverable. <u>See, e.g.</u>, <u>Wis. Gas Co. v. Fed. Energy Regulatory Comm'n</u>, 758 F.2d 669, 674 (D.C. Cir. 1985) ("The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm.") (citing <u>Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n</u>, 259 F.2d 921, 925 (D.C. Cir. 1958) (per curiam). The judges of this Court have frequently concluded that insolvency to pay a damage award may constitute irreparable harm. <u>Carabillo v. ULLICO</u>

Inc. Pension Plan and Trust, 355 F. Supp. 2d 49, 55 (D.D.C. 2004) ("economic loss may constitute irreparable harm where defendant would become insolvent or otherwise judgment-proof prior to the conclusion of litigation thus making the plaintiff's alleged damages unrecoverable"); Foltz v. U.S. News and World Report, Inc., 613 F.Supp. 634, 643 (D.D.C. 1985) (concluding that the unavailability of assets to pay a damage award would irreparably injure the plaintiffs).

In this case, the liquidation of the Bank and the bankruptcy of the parent company would render the Bank judgment proof. If, in the process of the liquidation of the Bank, the remaining assets are transferred to the bankrupt parent company, the likelihood of the FDIC being able to recover those assets is very low.

If the economic harm is indeed irreparable, the FDIC's measurement of that harm is, however, inaccurate. The FDIC characterizes the amount of harm as in the hundreds of millions of dollars because that is the amount which the Insurance Fund may have to cover if ABC fails. However, this amount is not the proper measure of harm in this case. The harm to the Insurance Fund resulting from the Court's Order can only be measured by the amount of money dissipated from the Bank as a result of unsafe or unsound practices. Even if the FDIC is correct and the decisions by the Board and the Bank to liquidate and to return money to depositors were illegitimate decisions made by parties with conflicts of interest, the amount of money available to cross-guarantee the losses at ABC is not near the total amount ABC threatens to lose and cost the Insurance Fund. Nevertheless, while the harm is not as great as FDIC claims, the likelihood that it will become at best another creditor in bankruptcy of an insolvent bank establishes a sufficient showing of irreparable harm.

C. Harm to Other Interested Parties

From an economic point of view, the harm to the Bank from a stay could be described as minimal or nonexistent because it merely maintains the situation that has been in place since the Temporary Order was issued in December until the FDIC hearing is held in April. But, it is impossible to ignore that issuing a stay would grant the FDIC permission to do in the interim the very thing that I found it lacked the authority to do in the first place. As the Bank notes, taken to its logical conclusion, this basically allows the FDIC to act outside its statutory authority provided it is not causing irreparable harm to the institutions it is regulating. See Bank's Opposition at 4. Granting a stay severely prejudices the Bank by eliminating any recourse the Bank would have against the FDIC's illegal exercise of authority. This cannot be the case. The legality of the government's actions do not turn on the amount of harm it causes, but instead on the expressed boundaries of authority given to the agency by Congress. Accepting the argument that preventing the Bank from doing what it had the right to do is harmless because the prejudice caused it by the governmental usurpation is "merely economic" and therefore not "irreparable" eliminates the statutory check that Congress created on the FDIC's authority. What is supposed to be a rare "intrusion into the ordinary processes of administration and judicial review"[4] would be commonplace, as long as a government agency could do exactly what it was not authorized to do while at the same time justify its continued usurpation on the spurious grounds that the status quo was being maintained during the appeals process.

D. The Public's Interest

The public has an obvious interest in not paying for the mismanagement of failed banks

---

[4] Holiday Tours, 559 F.2d at 843.

any more than it already is.  On the other hand, the public has at least an equal interest in restraining federal agencies to the limits Congress has set.  Thus, evaluation of this factor rests in equipoise.

## CONCLUSION

Considering the appropriate factors, I find first that, while threatened with irreparable harm, the FDIC has a low likelihood of success on the merits.  Second, the issuance of the stay would be highly prejudicial to the Bank since it is being prevented from doing what it could otherwise do but for the illegal authority asserted by the FDIC.  Finally, although the public interest in conserving taxpayer's money is equal to the interest in restraining FDIC to the limits on its authority that Congress set, I nevertheless conclude that the low likelihood of success on the merits coupled with the prejudice that the Bank would suffer warrant denying the stay.

An Order accompanies this Memorandum Opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE